IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PATRICIA JACKSON; MAC ROGER JENKINS;
JOHN SIMS; and TRENNA SIMS                                    PLAINTIFFS

V.                              CASE NO. 5:23-CV-5102

TYSON FOODS, INC.                                            DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Now before the Court is Tyson Foods, Inc.'s ("Tyson") Motion to Dismiss (Doc. 14). On June 23, 2023, Plaintiff Patricia Jackson filed a Complaint (Doc. 2), alleging religious discrimination under Title VII and the Arkansas Civil Rights Act and disability discrimination under Arkansas Act 1113. On July 17, 2023, Plaintiff filed an Amended Complaint (Doc. 6), adding Plaintiffs Mac Roger Jenkins, John Sims, and Trenna Sims and adding a claim under the Nuremberg Codes. On September 12, 2023, Tyson moved to dismiss the Amended Complaint for failure to state a claim. *See* Doc. 14. The Motion is now fully briefed and ripe for review. Upon consideration, Tyson's Motion to Dismiss is **GRANTED**. Further, Plaintiffs are **ORDERED TO SHOW CAUSE** as to why Count IV of their Amended Complaint does not violate Rule 11(b) of the Federal Rules of Civil Procedure.

## I.  BACKGROUND[1]

On or about August 3, 2021, Tyson announced that it was implementing a vaccine mandate for employees in response to the COVID-19 pandemic. This mandate required all team members to be vaccinated by either October 1, 2021, or November 1, 2021,

---

[1] Because this matter was decided on a motion to dismiss, these facts are taken from the Plaintiffs' pleadings and attached documents.

depending on their location and position. Tyson permitted employees to apply for both religious and medical accommodations. If such an accommodation were granted, the employee would be placed on unpaid leave, while Tyson continued to work out alternative protective measures. According to Plaintiffs, this leave could last up to one year,[2] during which time an employee could get vaccinated and return to work—though returning to her original position was not guaranteed—or she would be terminated. If an employee informed Tyson that she would not meet the one-year vaccination deadline, Tyson would fill her position.

There are four Plaintiffs in this case: Patricia Jackson, Mac Rogers Jenkins, and John and Trenna Sims. At the time the mandate was implemented, Ms. Jackson had worked for Tyson since November 2012 and was serving as Senior Director of Sales; she was subject to the October 1 vaccination deadline. Mr. Jenkins was employed as a maintenance supervisor and was subject to the November 1 deadline. Mr. Sims had worked for Tyson for 10 years and was working as a maintenance technician; he was subject to the November 1 deadline. Mrs. Sims served as a backup machine operator and was also subject to the November 1 deadline.

All four Plaintiffs filed requests for religious exemptions from Tyson's mandate and were approved for unpaid leave.[3] Ms. Jackson timely filed a charge of discrimination with

---

[2] The Amended Complaint states that "[e]mployees placed on [leave] were given one year, during which time if they got vaccinated, they could potentially return to work . . . . At the end of the year, if they remained unvaccinated, they were terminated." (Doc. 6, p. 4). Mr. Jenkins's Charge of Discrimination filed with the EEOC states that it was a six-month leave. (Doc. 6-6, p. 2).

[3] The fact that Tyson approved the Plaintiffs' requests does not itself constitute an admission that the Plaintiffs' "beliefs are religious for the purposes of a lawsuit under Title VII"; Plaintiffs "still [have] the burden to plead facts to show that [their] beliefs are religious, rather than personal, political, or medical." *See Passarella v. Aspirus, Inc.*, 2023 WL

the Equal Employment Opportunity Commission ("EEOC") on March 14, 2022, and was granted a Right to Sue letter on March 27, 2023. Mr. Jenkins filed his EEOC charge of discrimination on April 15, 2022, and received his Right to Sue letter on April 17, 2023. Mr. and Mrs. Sims filed discrimination complaints with the EEOC on April 21, 2022, and each received their Right to Sue letters on April 17, 2023.

Plaintiffs now bring the present suit, alleging four causes of action: (1) a religious discrimination/failure to accommodate claim under Title VII, 42 U.S.C. § 2000e et seq.; (2) a religious discrimination claim under the Arkansas Civil Rights Act of 1993 ("ACRA"), Ark. Code Ann. § 16-123-107; (3) a violation of Arkansas Act 1113, 93rd Gen. Assembly, Reg. Sess., 2021 (codified at Ark. Code Ann. § 11-5-118(a)–(b) (expired by its own terms on July 1, 2023)) ("Act 1113"), and (4) a violation of the Nuremberg Code. *See* Doc. 6.

## II.  LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A pleading containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

2455681, at *6–7 (W.D. Wis. Mar. 10, 2023), *appeal docketed*, No. 23-1661 (7th Cir. April 5, 2023).

do not suffice" and are "not entitled to the assumption of truth."). "The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

"When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). Further, "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, a court may consider "materials that are part of the public record or do not contradict the complaint" and documents "necessarily embraced by the pleadings." *Id.* (quotations and citations omitted).

## III. DISCUSSION

### A. Counts I and II

Plaintiffs bring claims of religious discrimination under both Title VII and ACRA. In failure-to-accommodate claims, the plaintiff/employee bears the burden of establishing the *prima facie* claim by showing that he or she: (1) has a bona fide religious belief that conflicts with an employment requirement, (2) informed the employer of such conflict, and (3) suffered an adverse employment action. *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003). After a plaintiff establishes a *prima facie* claim under this three-pronged test, the burden shifts to the defendant "to show that accommodating the plaintiff's religious beliefs would result in undue hardship." *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000); 42 U.S.C. § 2000e(j) (excluding cases where "an employer demonstrates that he is unable to reasonably accommodate to an employee's or

prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.").[4] At this stage, Plaintiffs are not required to plead all three *prima facie* elements. However the "elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Kiel v. Mayo Clinic Health Sys. Se. Minn.*, 2023 WL 5000255, at *7 (D. Minn. Aug. 4, 2023), *appeal docketed*, No. 23-2996 (8th Cir. Sep. 1, 2023) (quoting *Warmington v. Bd. of Regents of Univ. Minn.*, 998 F.3d 789, 796 (8th Cir. 2021)). Here, Tyson primarily disputes the first prong of Plaintiffs' *prima facie* claim: whether Plaintiffs' beliefs are religious.

When claiming protection against religious discrimination under Title VII, "[o]nly sincerely held beliefs rooted in religion are protected," and "[e]mployers need not accommodate a 'purely personal preference.'" *Kiel*, 2023 WL 5000255 at *6 (first citing *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000); then citing *Vetter v. Farmland Indus., Inc.*, 120 F.3d 749, 751 (8th Cir. 1997)). Thus, the first *Jones* prong requires two findings: (1) that the belief is "sincerely held" and (2) that the belief is religious within the plaintiff's

---

[4] For the following reasons, this Court finds it appropriate to analyze Count II, the claim under ACRA, using the same three-part test as Count I, the claim under Title VII for failure to accommodate. First, ACRA's definition of religion and setting up of a burden shifting framework for making out a case of discrimination closely aligns with Title VII, 42 U.S.C. § 2000e(j). *Compare* 42 U.S.C. § 2000e(j), *with* Ark. Code Ann. § 16-123-102(8) ("'Religion' means all aspects of religious belief, observance, and practice.") *and* § 16-123-103(b) ("It shall not constitute employment discrimination under this subchapter for an employer to refuse to accommodate the religious observance or practice of an employee or prospective employee if the employer demonstrates that he or she is unable to reasonably make such accommodation without undue hardship on the conduct of the employer's business."). And second, this Court and the Eighth Circuit have found that, in other contexts, analyses under ACRA are guided by the analyses for Title VII claims. *See Orr v. City of Rogers*, 232 F. Supp. 3d 1052, 1061 n.2 (W.D. Ark. 2017) ("Title VII and ACRA claims 'are governed by the same standards.'" (quoting *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009))).

"own scheme of things." *Blackwell v. Lehigh Valley Health Network*, 2023 WL 362392, at *4 (E.D. Pa. Jan. 23, 2023) (citing *Welsh v. United States*, 398 U.S. 333, 339 (1970)).

The "difficult and delicate" determination of whether a belief is indeed religious may not "turn upon a judicial perception of the particular belief or practice in question." *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit" protection. *Id.* It is, thus, not a question of "whether a plaintiff's religious beliefs are reasonable, ethical, or well-founded—but only whether those beliefs are indeed religious." *Blackwell*, 2023 WL 362392 at *1 (citing *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981)). While courts may not wade into "scriptural interpretations," *Thomas*, 450 U.S. at 716, they may rightfully be called upon to determine whether dismissal is proper based on a plaintiff's failure to "plead[ ] sufficient information to establish the nature of plaintiff's religious beliefs." *Blackwell*, 2023 WL 362392 at *6.

The difficulty and delicacy of this task lies in this country's history and tradition of protecting and respecting differing religious beliefs. Courts must strike the balance of steadfastly protecting religious beliefs without ever-expanding such protections into a blanket privilege that would water down the inviolable protection specially reserved for *religious* beliefs. *See Africa*, 662 F.2d 1031. Consequently, "the very concept of ordered liberty precludes allowing every person to make his *own* standards on matters of conduct which society as a whole has important interests." *Kiel*, 2023 WL 5000255 at *7 (emphasis added) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)). The Court undertakes the following analysis with this understanding.

6

Under Title VII, the term "religion" encompasses "all aspects of religious observance and practice, as well as belief." 42 U.S.C § 2000e(j). In a Title VII analysis, courts must distinguish between those beliefs that constitute religion, which are protected, and those that are "essentially political, sociological, philosophical" or "merely personal moral code[s]," as these are not afforded the same weighty protections. *See United States v. Seeger*, 380 U.S. 163, 172 (1965). To determine whether a belief warrants religious protection, "the Eighth Circuit considers whether the [belief] address[es] 'fundamental and ultimate questions having to do with deep and imponderable matters,' if the teachings are comprehensive in nature,' or isolated, and if there are 'certain formal and external signs' present." *Kiel*, 2023 WL 5000255 at *7 (quoting the Eighth Circuit's adoption of *Africa*, 662 F.2d at 1032 in *Love*, 216 F.3d at 687); *see also id.* (stating this is not a rigid test but should be "applied flexibly and with careful consideration to each belief system" (citing *Love*, 216 F.3d at 687)).

Accordingly, district courts in various circuits have found that a plaintiff may not claim Title VII protection against religious discrimination where—even though the plaintiff alleges that his or her opposition to vaccination is a religious belief—the opposition is actually grounded in an isolated moral belief based on politics, sociology, or philosophy; a medical belief; or a belief in making one's own choices. *See, e.g.*, *Kiel*, 2023 WL 5000255 at *7–9; *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (concluding that a plaintiff's opposition to the flu vaccine was based in medical beliefs and isolated moral teachings, not religion); *Passarella*, 2023 WL 2455681, at *6 ("[T]he use of religious vocabulary does not elevate a personal medical judgment to a

matter of protected religion.").[5] Still, a "deeply and sincerely" held belief that is "purely ethical or moral in source and content but that nevertheless impose[s] upon [one] a duty of conscience" to act in a particular way, may be considered religious if it "function[s] as a religion" in that person's life and is "held with the strength of traditional religious convictions." *Welsh*, 398 U.S. at 340.

To plead a religious belief sufficiently, "a plaintiff must allege some facts regarding the nature of her belief system, as well as facts connecting her objection to that belief system." *Caspersen v. W. Union, LLC*, 2023 WL 6602123, at *7 (D. Colo. Oct. 10, 2023) (quoting *Aliano v. Township of Maplewood*, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023)). "The requirement that Title VII plaintiffs provide more than a recitation of the elements of a prima facie claim is not an empty formalism," as courts have held that "certain pleadings in Title VII religious discrimination cases did not suffice because, on close inspection, their allegations, which were couched as religious objections to employment practices, were in fact secular." *Gamon v. Shriners Hosps. for Child.*, 2023 WL 7019980, at *3 (D. Or. Oct. 25, 2023). "Conclusory allegations that a belief is religious are therefore insufficient; rather, a plaintiff must allege *how* her objection is based upon a *religious* belief. In other words, she must demonstrate that her objection arises from a subjective belief that is tied

---

[5] To be sure, distinguishing between religious beliefs and nonreligious beliefs labelled as such is a different inquiry than separating the "religious beliefs themselves" from the plaintiff's view that there is a "conflict[ ] with their sincerely held religious beliefs." *Equal Emp. Opportunity Comm'n v. Kroger Ltd. P'ship I*, 608 F. Supp. 3d 757, 777 (E.D. Ark. 2022). This Court's analysis will not attempt to "isolate[ ] the 'religious belief' question from the 'conflict' question," because—as the Eastern District of Arkansas aptly points out—this "slices things far too thin." *Id.* (citing *Burwell v. Hobby Lobby Stores*, Inc., 573 U.S. 682 (2014) and *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021)). Rather, the following analysis will address "whether the employer's asserted conflict was actually religious in nature," which is an entirely different question. *Id.* at 779, n.140.

to her belief system which meets the *Africa* factors." *Caspersen,* 2023 WL 6602123 at *7 (emphasis in original).

Illustrative of this distinction is the Eastern District of Virginia's decision in *Ellison v. Inova Health Care Services*, where the court considered a sufficiently pled religious belief and an insufficiently pled one. First, the court discussed plaintiff Ellison's adequately pled belief:

> With respect to this claim, the Court finds that Ellison has adequately linked his objection to a sincerely held religious belief. In his request, he refers to verses in the Christian Bible that, in his view, support the notion that "life begins at conception," and he goes on to explain that, because "every life is sacred," "[a]ny action that would . . . generate a future demand for fetal cell tissue, violates the core religious beliefs that [he] hold[s] dear." *Id.* Ellison continues that he believes his faith did not allow him to "benefit from a human being whose life was taken by the hands of another," and thus, in his view, receiving the vaccine would amount to sin. *Id.* Based on these statements, Ellison's exemption request provides sufficient allegations regarding his subjective personal beliefs, how those beliefs are related to his faith, and how those beliefs form the basis of his objection to the COVID-19 vaccination. . . .

*Ellison v. Inova Health Care Servs.*, 2023 WL 6038016, at *6 (E.D. Va. Sept. 14, 2023) (internal citations removed). The court then discussed plaintiff Graham's insufficiently pled belief:

> Graham also claims that her religious aversion to abortion prevents her from getting the COVID-19 vaccine. . . .The only information before the Court concerning [Graham's] abortion-based objection to the vaccine is found in a single numbered paragraph of the Plaintiffs' Amended Complaint [that states,] "Ms. Graham also has religious objections to abortion, and to receiving vaccines that were testing [sic] or produced using materials derived from abortion."[ ] That conclusory statement fails to provide a sufficient connection between Graham's objection to the COVID-19 vaccines—that they were "tested or developed using cell lines derived from aborted fetuses[ ]"—and her subjective religious beliefs. Graham did not

provide any additional information regarding the nature of *her* Christian beliefs, including how receiving the COVID-19 vaccine would violate those beliefs. Again, before treating a belief as "religious," the Court must assess whether Graham's belief is based on her "own scheme of things"—regardless of what is widely accepted in her stated religion. It is Graham's *subjective* religious belief that is protected; and, for that reason, she must provide information concerning the religious nature of that belief and how it is connected to her objection to the COVID-19 vaccine. . . . Because Graham has failed to do so, her abortion-based claim will be dismissed.

*Id.* at *7 (internal citations removed); *see also Aliano*, 2023 WL 4398493 at *6–10 (describing various adequate pleadings and comparing them to the insufficient pleadings that merely make conclusory statements that the use of aborted fetal cell lines directly conflicts with the plaintiff's religion). In summary, the Court must decide whether Plaintiffs have sufficiently pled that their sincerely held beliefs are indeed religious—considering the *Africa* factors—and entitled to Title VII protection, or whether they are, instead, personal, isolated moral beliefs.

### 1. Patricia Jackson

Ms. Jackson is a practicing Catholic who claims that Tyson's vaccine mandate violates her religious beliefs. Ms. Jackson has attached to the Amended Complaint her request for religious accommodation (Doc. 6-1), Tyson's grant of her religious exemption (Doc. 6-3), her EEOC Charge of Discrimination (Doc. 6-4), her EEOC Dismissal and Notice of Rights (Doc. 6-5), and an affidavit further explaining her religious beliefs (Doc. 6-2). Ms. Jackson lays out her beliefs in greater detail than the other Plaintiffs. She states that the vaccine conflicts with her religious beliefs because it was developed using an aborted fetal cell line and because her religion requires consent for vaccination. While this Court finds that Ms. Jackson holds sincere beliefs regarding the COVID vaccine's development, efficacy, necessity, and safety, these beliefs cannot be characterized as

religious within Ms. Jackson's "own scheme of things." Additionally, her backstop argument that her religion prevents her from receiving the vaccine unless she consents constitutes a blanket privilege guided only by "[her] own standards on matters of conduct which society as a whole has important interests." *Kiel*, 2023 WL 5000255 at *7 (quoting *Yoder*, 406 U.S. at 215–16). To survive a motion to dismiss, Ms. Jackson is required to "plead[ ] sufficient information to establish the nature of [her] religious beliefs." *Blackwell*, 2023 WL 362392 at *6. And the Court is only required to credit "sincerely held" beliefs that are "religious" within the plaintiff's "own scheme of things." *Id.* at *4 (citing *Welsh*, 398 U.S. at 339).

Here, Ms. Jackson offers two sources to establish her "scheme" of religious belief: an affidavit and a citation to the Congregation for the Doctrine of the Faith's ("CDF") "Note on the morality of using some anti-Covid-19 vaccines." *See* Doc. 6-2; *see also* Luis F. Card. Ladaria, S.I., *Note on the Morality of Using Some Anti-Covid-19 Vaccines*, Congregation for the Doctrine of the Faith (Dec. 21, 2020), https://www.vatican.va/roma n_curia/congregations/cfaith/documents/rc_con_cfaith_doc_20201221_nota-vaccini-anticovid_en.html#_ftn3 [https://perma.cc/9PKB-ZDQ3] [hereinafter "CDF Note"]. The affidavit and CDF Note are embraced by Ms. Jackson's pleadings and may, therefore, properly be considered by the Court at this stage.

In her affidavit, Ms. Jackson relies on the CDF Note, extensively quoting and summarizing it as the basis of her alleged religious conflicts with vaccination. Ms. Jackson interprets the CDF note to create a religious obligation to avoid the vaccine unless the four following conditions are met: (a) COVID is otherwise uncontainable, (b) there is an absence of alternative measures, (c) the vaccines are clinically safe, and (d) vaccination

is based on voluntary consent. (Doc. 6-2, p. 2). Ms. Jackson then asserts in her affidavit that "all four elements have yet to be satisfied," and therefore her religious obligation to avoid the vaccine is triggered. *Id.*

In direct contrast to this claim, the CDF Note states that "*it is morally acceptable to receive Covid-19 vaccines that have used cell lines from aborted fetuses in their research and production process*" in such cases where "ethically irreproachable Covid-19 vaccines are not available," such as when a country only offers vaccines that use aborted fetal cell lines in their development. CDF Note (emphasis in original). The CDF Note further states, in cases that pose "grave danger, such as the uncontainable spread of a serious pathological agent—in this case, the pandemic spread of the SARS-CoV-2 virus that causes Covid-19," that "all vaccinations recognized as clinically safe and effective can be used in good conscience *with the certain knowledge that the use of such vaccines does not constitute formal cooperation with the abortion* from which the cells used in production of the vaccines derive." CDF Note (emphasis in original).

While Ms. Jackson relies on the CDF's four factors, she extricates these secular reasons from the CDF's surrounding guidance and makes her stated religious obligation to avoid the vaccine wholly dependent on her own beliefs about its efficacy, safety, and necessity.  Of course, a person's beliefs are not per se nonreligious simply because they do not precisely conform to a stated doctrine. Ms. Jackson is well within her right to develop her own religious beliefs outside official Catholic doctrine. However, other than citing to the CDF Note, Ms. Jackson provides no religious basis to support her conclusions as to why the four secular factors have not been met and why she cannot get the vaccine.

12

While the Court will not engage in "scriptural interpretations" or judge the comprehensibility or objective reasonableness of Ms. Jackson's beliefs, because the CDF Note—the only link offered between her opposition to the COVID vaccine and religion—directly contradicts her stated beliefs, Ms. Jackson has failed to "plead[ ] sufficient information to establish the nature of [her] religious beliefs" or that her beliefs are religious within her "own scheme of things." *Blackwell*, 2023 WL 362392 at *6; *see also id.* at *4 (citing *Welsh*, 398 U.S. at 339).

To summarize, in Ms. Jackson's own words, her religious obligation to avoid the vaccine is wholly triggered by secular factors: necessity, efficacy, safety, and voluntariness. In concluding that those secular factors are not satisfied, and thus her religious duty is triggered, Ms. Jackson offers no religious basis other than her citation to the CDF Note. The CDF, however, contradicts Ms. Jackson's conclusions on the secular factors, concluding instead that the moral obligation to avoid the vaccine is not triggered with respect to COVID vaccination. Ms. Jackson is then left to rely on the CDF Note's proclamation that the vaccine must be voluntary—regardless of whether the religious obligation is triggered. This religious belief in voluntariness, however, is an impermissible blanket privilege that cannot sustain an action for religious discrimination. Because the Court finds that her beliefs against vaccination are rooted in political, sociological, philosophical, and/or medical—rather than religious—beliefs, Ms. Jackson's claims under Title VII and ACRA are dismissed.

### 2. *Mac Roger Jenkins*

Mr. Jenkins objects to the COVID vaccine due to its alleged development using an aborted fetal cell line, his belief that he treats his body as a temple, his belief in informed

consent, and various safety concerns. (Doc. 6, p. 7–8; Doc. 6-6, p. 2). The Court concludes that while these are all sincerely held beliefs, none are sufficiently pled as *religious*.

Mr. Jenkins's Charge of Discrimination—filed with the EEOC and embraced by the Amended Complaint—provides the clearest explanation of his first objection to the vaccine: "I have sincere religious objections to the vaccine and distinct reasons as to why taking this vaccine violates my conscience. First, aborted fetus cells were used in the development and/or production of these vaccines. I respect all human life and refuse to benefit from harm to fetal life." (Doc. 6-6, p. 2). While Mr. Jenkins labels his objections to the vaccine as being religious, he fails to "actually tie [his] anti-abortion beliefs to any 'formal and external signs or religion'" or link his "opposition to the vaccine to any particularized religious belief." *Kiel*, 2023 WL 5000255 at *8*; see also Twombly*, 550 U.S. at 555 (holding conclusory statements are insufficient). *Cf. Corrales v. Montefiore Med. Ctr.*, 2023 WL 2711415, at *2 (S.D.N.Y. Mar. 30, 2023) (finding the COVID vaccine plausibly conflicted with the plaintiff's religious beliefs where plaintiff connected her opposition to the COVID vaccine and its use of aborted fetal cell lines to her comprehensive belief system based on her interpretation of the Bible, stating *inter alia*, "God says the life of all flesh is in the blood" and "to inject this directly into the bloodstream would TAINT the blood. . . ," similar to God's prohibition of immunizations using ingredient from animals that "are considered by God as unclean").[6] The Court respects that Mr.

---

[6] In *Lewis v. Tyson Foods Inc.*, No. CIV-22-918-J, ECF 24, at 4 (W.D. Ok. Feb. 2, 2023), the Western District of Oklahoma concluded that allegations quite similar to Mr. Jenkins's were sufficient to state a claim. When compared to the cases discussed in subpart III(A), the reasoning in *Lewis* is sparse and does not engage with the number of district court cases finding to the contrary. Because *Lewis* is not binding on this Court and because

Jenkins may hold strong and sincere beliefs against the use of aborted fetal cell lines in the development of vaccines. But he fails to explain how this belief is religious. Such isolated personal beliefs are not entitled to the same level of protection as religious beliefs, and Mr. Jenkins has not to "plead[ ] sufficient information to establish the nature of [his] religious beliefs." *Blackwell*, 2023 WL 362392 at \*6.

Second, Mr. Jenkins asserts that his "religious beliefs require him to treat his body as a temple, and not knowingly desecrate it" by "consenting to the invasion of his body with foreign toxins." (Doc. 6, p. 7). In *Kiel*, a plaintiff similarly asserted a religious belief that her body was a "Temple to the Holy Spirit" and that she, therefore, could not "put into it substances which are impure or dangerous." *Kiel*, 2023 WL 5000255 at \*7. The district court in *Kiel* concluded that because the plaintiff did not allege a religious belief to explain why she believed the vaccine was "impure or dangerous," but instead based that view on medical and safety determinations, she did not satisfy the first prong of the *prima facie* case. The court explained:

> The important question isn't whether an employee has a religious belief not to mistreat her body; the question is whether the employee's belief that the vaccine qualifies as a mistreatment *is itself based in religion*. If [plaintiff] believed that the vaccine defiled her body because it was unhealthy or unsafe, that would be a medical objection, not a religious objection . . . . But if her objection to the vaccine was rooted in her belief 'that she must remain as God made her,' that would be sufficient to show a religious conflict at the pleading stage.

*Id.* at \*8 (emphasis added) (quoting *Petermann v. Aspirus, Inc.*, 2023 WL 2662899, at \*2 (W.D. Wis. March 28, 2023)); *see also Ellison*, 2023 WL 6038016 at \*5 (rejecting nearly identical claims to Mr. Jenkins's body-as-a-temple claim because "though couched in

---

this Court finds *Lewis*'s reasoning less persuasive than cases such as *Kiel* and *Blackwell*, this Court declines to follow it.

religious terms," the plaintiff's refusal to get vaccinated was "based on concerns of vaccine safety"). The Court does not question that Mr. Jenkins has a religious belief requiring he treat his body as a temple. But Mr. Jenkins does not allege why, under his religious beliefs, the COVID vaccine constitutes a "foreign toxin[ ]." Instead, he states that he "provided evidence and documentation to other members of management regarding [his] concerns and the dangers this vaccine posed." (Doc. 6-6, p. 2). Similar to *Kiel*, Mr. Jenkins's pleadings and EEOC Charge reflect a strong concern with the safety and efficacy of the vaccine and provide no religious basis for why the vaccine constitutes a "foreign toxin."

Third, though Mr. Jenkins states that he holds a religious belief that "all medical treatment be conditioned upon informed consent," (Doc. 6, p. 8), he cannot claim that he has a religious right "to make his own standards on matters of conduct which society as a whole has important interests." *Kiel*, at *7 (quoting *Yoder*, 406 U.S. at 215–16 (emphasis added)). Not only would this be a choice based on personal preferences, which employers are not required to protect, it would also afford Mr. Jenkins the exact type of "blanket privilege" that the Third Circuit warned against in *Africa*. Further, Mr. Jenkins's refusal to give consent seems conditioned on "concerns about dangers this vaccine posed." (Doc. 6-6, p. 3). The Court recognizes how compelling a philosophical belief in autonomy and informed consent can be when it comes to medical decisions. The Court also understands that Mr. Jenkins holds sincere concerns about the safety of the vaccines that kept him from giving that consent. However, the facts set forth in the Amended Complaint and accompanying exhibits fail to link his belief against vaccination without consent or his

reasoning for refusing to give consent to his religious beliefs beyond merely labelling them as such.

Because Mr. Jenkins does not adequately root his concerns in his religious beliefs—rather than medical, sociological, or philosophical beliefs—the Court finds that he has failed to state a plausible claim for relief under Title VII and ACRA.

### 3.  *John and Trenna Sims*

The Amended Complaint states that Mr. and Mrs. Sims are "strongly opposed to the use of aborted fetus cells used in the development and/or production of COVID-19 vaccines"; and that they "respect[ ] all human life and refuse[ ] to benefit from harm to fetal life." (Doc. 6, pp. 9–10). These are the only substantive allegations in the Amended Complaint from which the Court can discern the nature of their opposition to the vaccine, and they fail to ground such opposition in a religious belief.

Mr. and Mrs. Sims filed identical EEOC charges, which although more detailed than the Amended Complaint, similarly fail to link their concerns to a religious belief. The bulk of their complaints focuses on how Tyson's incentive programs for the vaccines "discriminat[ed] against employees who were *not wanting* to get the shot." (Doc. 6-8, p. 2 (emphasis added)). Only the final sentence in each charge addresses their religious claims, stating "upon learning that the vaccines were developed using aborted fetal cells we applied for a religious exemption based on our pro-life beliefs." *Id.* Other than establishing that they used the religious exemption as a vehicle to avoid the vaccine based on their pro-life beliefs, Mr. and Mrs. Sims do not allege or discuss how their religious beliefs necessitate their refusal of the vaccine. They do "not actually tie [their] anti-abortion beliefs to any 'formal or external signs' of religion," and because a "religious

opposition to abortion is different from an opposition to **vaccines** that were potentially developed using a fetal cell line," they have "fail[ed] to tie [their] opposition to the vaccine to any particularized religious belief." *Kiel*, 2023 WL 5000255 at *8 (emphasis in original); *see also Aliano*, 2023 WL 4398493 at *10 (rejecting similar pleadings as insufficient to allege religious belief). Title VII and ACRA do not protect personal choices, and Mr. and Mrs. Sims have not alleged sufficient information to establish that the nature of their beliefs against receiving the vaccine is religious.

* * *

Though the Court "accepts as true that Plaintiff[s] [have] concerns with the COVID-19 vaccine," it "cannot reasonably infer, based on the facts alleged" in the Amended Complaint and attached exhibits, that their "concerns are religious in nature." *Winans v. Cox Auto., Inc.*, 2023 WL 2975872 (E.D. Pa. Apr. 17, 2023) (citing *Fallon*, 877 F.3d at 492). Plaintiffs have not alleged that their objections to the vaccine (1) "address fundamental and ultimate questions having to do with deep and imponderable matters;" (2) are a part of "'a belief-system' that is 'comprehensive in nature . . . as opposed to an isolated teaching;'" or "(3) are marked 'by the presence of certain formal and external signs.'" *Id.* (quoting *Africa*, 662 F.2d at 1032). Because Plaintiffs fail to tie their concerns about the COVID vaccine to a religious belief, they have failed to state a plausible claim for relief under Title VII. Additionally, because ACRA uses the same analysis, they have also failed to state a claim for relief under state law. Accordingly, Counts I and II of the Amended Complaint are **DISMISSED**.

18

**B.  Count III**

Plaintiffs bring a state law claim under Act 1113—legislation passed by Arkansas to address mandatory vaccine requirements by employers. The parties disagree whether there is a private cause of action under Act 1113. They further disagree whether the Act can retroactively apply when the vaccine mandate and initiation of leave occurred prior to its passage but leave was still ongoing after it was passed. These are questions of first impression.

Because the Court "has dismissed all claims over which it has original jurisdiction," it declines to exercise supplemental jurisdiction over Count III under 28 U.S.C. § 1367. *See* § 1367(c)(3); *see also* § 1367(c)(1). Therefore, Count III of the Amended Complaint is **DISMISSED**.

**C.  Count IV**

Finally, without citing any legal pathway for doing so, Plaintiffs attempt to raise a claim under the Nuremberg Code. They contend that Tyson's requirement that employees be vaccinated against COVID is "reminiscent of some of the darkest periods of human history," alluding to the Nazis' persecution, murder, and torture of Jewish and other ostracized peoples. (Doc. 6, p. 28).

Plaintiffs assert that the Nuremburg Code is "enforceable against all those who violate it, including in the federal courts of the United States." (Doc. 6, p. 27). To the contrary, the Nuremberg Code "is not cognizable as a matter of law" in federal court. *Winans*, 2023 WL 2975872 at *5. There is no private right of action for a violation of international law based on the Nuremberg Code. *Johnson v. Tyson Foods, Inc.*, 607 F. Supp. 3d 790, 807–08 (W.D. Tenn. June 15, 2022) (citing *Washington Univ. v. Catalona*,

437 F. Supp. 2d 985, 1000 (E.D. Mo. 2006), *aff'd*, 490 F.3d 667 (8th Cir. 2007)). And the Nuremberg Codes are not applicable to private employers like Tyson. *Johnson*, 607 F. Supp. 3d at 807 (citing *Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 528 (S.D. Tex. 2021)).

Plaintiffs' counsel should know this well, as they and their firm have already faced dismissal of this identical claim in several cases before other federal district courts. *See Reed v. Tyson Foods, Inc.*, 2022 WL 2134410, at *13–14 (W.D. Tenn. June 14, 2022) (noting that, beyond there being no private right of action and it not applying to private employers, plaintiffs cited no law to support their claim under the Nuremberg Code, but made only policy arguments); *Johnson*, 607 F. Supp. 3d at 807 (same); *Lewis v. Tyson*, No. 5:22-CV-00918-J, ECF 24, at 10 (W.D. Ok. Feb. 2, 2023) (same). And even cursory research into the cases cited in *Reed*, *Johnson*, and *Lewis* shows substantial consensus in numerous other courts as well. *See, e.g.*, *Johnson*, 607 F. Supp. 3d at 807–08 (first citing *Catalona*, 437 F. Supp. 2d 985; then citing *Anderson v. United Airlines, Inc.*, 577 F. Supp. 3d 1324, 1335–36 (M.D. Fla. Dec. 30, 2021); then citing *Heinrich ex rel. Heinrich v. Sweet*, 49 F. Supp. 2d 27, 42 (D. Mass. 1999); and then citing *Bridges*, 543 F. Supp. 3d at 528).

This Court agrees with the Southern District of Texas that it is reprehensible to equate Tyson's vaccine mandate to the Nazi Party's medical experimentation in concentration camps, for which the Nuremberg Code was created, and is appalled by such a comparison. *See Bridges*, 543 F. Supp. 3d at 528. The Nuremberg Code originated from a specific case in the Nuremberg Trials, *U.S.A. v. Karl Brandt et al.*, referred to as "The Doctors' Trial," in which

> [t]he specific crimes charged included more than twelve series of medical experiments concerning the effects of and treatments for high altitude conditions, freezing, malaria, poison gas, sulfanilamide, bone, muscle, and nerve regeneration, bone transplantation, saltwater consumption, epidemic jaundice, sterilization, typhus, poisons, and incendiary bombs.
>
> These experiments were conducted on concentration camp inmates. Other crimes involved the killing of Jews for anatomical research, the killing of tubercular Poles, and the euthanasia of sick and disabled civilians in Germany and occupied territories.

*NMT Case 1 U.S.A. v. Karl Brandt et al.: The Doctor's Trial*, HLS Nuremberg Trials PROJECT (last reviewed March 2020), https://nuremberg.law.harvard.edu/nmt_1_intro [https://perma.cc/YBU6-H4AU] [hereinafter HLS Nuremberg Trials Project].[7] As pointed out by the courts in both *Reed* and *Johnson*, "Nazi doctors conducted medical experiments on victims that caused pain, mutilation, permanent disability, and in many cases, death." *Id.* Plaintiffs' bringing this cause of action is both legally and historically irresponsible.

"By presenting to the court a pleading," counsel "certifies that to the best of the [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(c)(3). Counsel was placed on notice by the decisions in *Reed*, *Johnson*, and *Lewis* that this claim is frivolous, but still brought it in this Court. Moreover, Plaintiffs do not argue for any extension, modification, or

---

[7] This project is a "multi-stage digitization project" that is working to provide access to the "approximately one million pages of documents relating to the trial of military and political leaders of Nazi Germany before the International Military Tribunal and the subsequent twelve trials of other accused Nazi war criminals before the United States Nuremberg Military Tribunals during the period of 1945-49." HLS Nuremberg Trials Project.

reversal of existing law or establishment of new law that would support this claim. Indeed, Plaintiffs cite no law, other than the Nuremberg Code itself, to support this cause of action. The claim is frivolous. The Court will not tolerate wasting judicial resources and therefore orders Plaintiffs' counsel to show cause as to why alleging a cause of action that Plaintiffs' counsel knows (a) provides no private right of action and (b) does not apply to private employers, is not a Rule 11(b) violation.

### D.  Leave to Amend

Finally, in their Response to the Motion to Dismiss (Doc. 21), Plaintiffs ask the Court for leave to amend to the extent the Court finds Plaintiffs failed to state a claim. While a district court has discretion whether to grant leave to amend, a court must freely grant such leave "[i]n the absence of any apparent or declared reason—such as . . . futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) . . . ." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (internal citations omitted).

Here, Plaintiffs have not tendered a proposed amended complaint, moved the Court for leave, or provided an explanation in their Response of the additional allegations they would include—as required by Local Rule 5.5(e). For the reasons below, the Court finds that any amendment would be futile and thus declines to grant leave to amend.

*Counts I and II*: In ruling on this Motion, the Court has considered the Amended Complaint, as well as all eight exhibits attached thereto, including all the Plaintiffs' EEOC charges, Ms. Jackson's request for religious accommodation, her affidavit explaining her beliefs, Tyson's grant of her religious exemption, and her EEOC Dismissal and Notice of

Rights. Plaintiffs used their first amendment—which they were entitled to as a matter of course—to raise frivolous claims, rather than shore up their religious discrimination claims. Further, even after the Motion to Dismiss put Plaintiffs on notice to the many on-point cases against them, Plaintiffs did not move to amend or provide a proposed amendment to the Court. This is not a case simply of poor pleadings, the facts behind the pleadings—as evidenced by the eight exhibits—do not support a plausible claim for relief under Title VII or ACRA.

*Counts III and IV*: Without Count I, the Court would continue to decline to exercise supplemental jurisdiction over Count III. Additionally, based on the reasoning in subpart III(C), the Court finds any amendment to Count IV would be futile.

Accordingly, the Court finds that further amendment would be futile, and will not grant the Plaintiffs further leave to amend as requested in their Response.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. The Court further **ORDERS PLAINTIFFS' COUNSEL TO SHOW CAUSE,** by no later than **December 7, 2023,** as to why the pursual of Count IV is not a Rule 11(b) violation.

**IT IS SO ORDERED** on this 27th day of November, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE